**IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF VIRGINIA**

BRANDIE L. HENSLEY,

                Plaintiff,

     v.

AMAZON.COM, INC., and
AMAZON WEB SERVICES, INC.,

               Defendants.

CASE NO.: 1:25-cv-310-LMB-WEF

## DEFENDANTS' MEMORANDUM IN SUPPORT OF THEIR MOTION TO DISMISS THE SECOND AMENDED COMPLAINT

# TABLE OF CONTENTS

**Page**

INTRODUCTION ................................................................................................................1

BACKGROUND ................................................................................................................5

LEGAL STANDARDS .......................................................................................................7

ARGUMENT ......................................................................................................................8

    A.    Plaintiff Fails to Allege That She Was Constructively Discharged.......................8

    B.    Plaintiff Fails To State A Claim Under Title VII. ................................................13

        1.    Title VII Does Not Recognize "Marital Status" As A Protected Characteristic. .............................................................................................13

        2.    Plaintiff Fails To State A Claim For Discrimination. ...............................13

        3.    Plaintiff's Hostile Work Environment Claim Is Equally Meritless. ..........19

        4.    Plaintiff's Allegations Negate Any Inference Of Retaliation. ...................22

    C.    Plaintiff Cannot State A Claim For Unlawful Termination In Violation Of Public Policy. .......................................................................................................24

    D.    Plaintiff's Interference With Prospective Employment Claim Is Frivolous. .........27

CONCLUSION ..................................................................................................................30

# TABLE OF AUTHORITIES

**Page(s)**

## Cases

*Agnew v. BASF Corp.*,
  286 F.3d 307 (6th Cir. 2002) ............................................................................10

*Alston v. Anderson*,
  No. 3:21-cv-733, 2023 WL 416197 (E.D. Va. Jan. 25, 2023) ............................14

*Ashcroft v. Iqbal*,
  556 U.S. 662 (2009).......................................................................................7, 14

*Atkins v. Smyth Cnty. Va. Sch. Bd.*,
  382 F. Supp. 3d 506 (W.D. Va. 2019) .................................................................8

*Bell Atl. Corp. v. Twombly*,
  550 U.S. 544 (2007)......................................................................................7, 19

*Bing v. Brivo Sys., LLC*,
  959 F. 3d 605 (4th Cir. 2020) ............................................................................14

*Booth v. Cnty. Exec.*,
  186 F. Supp. 3d 479 (D. Md. 2016) ...................................................................19

*Bowman v. State Bank of Keysville*,
  331 S.E.2d 797 (Va. 1985).................................................................................25

*Brinkley v. Harbour Recreation Club*,
  180 F.3d 598 (4th Cir. 1999), *overruled on other grounds by Desert Palace,
  Inc. v. Costa*, 539 U.S. 90 (2003)......................................................................16

*Bristow v. Daily Press, Inc.*,
  770 F.2d 1251 (4th Cir. 1985) ...........................................................................12

*Buchhagen v. ICF Int'l, Inc.*,
  545 F. App'x 217 (4th Cir. 2013) .......................................................................20

*Buchhagen v. ICF Int'l, Inc.*,
  650 F. App'x 824 (4th Cir. 2016) .......................................................................24

*Carmack v. Va.*,
  2019 WL 1510333 (W.D. Va. Apr. 5, 2019) .......................................................25

*Carroll v. Amazon Data Servs., Inc.*,
  No. 1:21-cv-1177, 2022 WL 3161895 (E.D. Va. Aug. 8, 2022) ...................2, 18, 20

*Carter v. Ball*,
  33 F.3d 450 (4th Cir. 1994) ...............................................................................20

*Clark Cnty. Sch. Dist. v. Breeden*,
    532 U.S. 268 (2001) ...................................................................................................24

*U.S. ex rel. Cody v. ManTech Int'l, Corp.*,
    746 F. App'x 166 (4th Cir. 2018) .............................................................................24

*Coleman v. Md. Ct. of Appeals*,
    626 F.3d 187 (4th Cir. 2010), *aff'd*, 566 U.S. 30 (2012) ...................................14, 16

*Copes v. Johns Hopkins Univ. Applied Physics Lab'y, LLC*,
    No. RDB-23-2306, 2025 WL 19987 (D. Md. Jan. 2, 2025) ...................................1, 9

*Cox v. Rumsfeld*,
    369 F. Supp. 2d 748 (E.D. Va. 2005) .......................................................................20

*Debiasi v. AARP*,
    No. 3:24-cv-115, 2024 WL 5108452 (E.D. Va. Dec. 13, 2024)...............................15

*Decoster v. Becerra*,
    119 F.4th 332 (4th Cir. 2024) ..................................................................................11

*DeLoach v. Blinken*,
    No. 1:21-cv-1121, 2022 WL 659184 (E.D. Va. Mar. 4, 2022)................................30

*DeMasters v. Carilion Clinic*,
    796 F.3d 409 (4th Cir. 2015) ...................................................................................23

*Dortch v. Cellco P'ship*,
    770 F. App'x 643 (4th Cir. 2019) .............................................................................10

*E.E.O.C. v. Navy Fed. Credit Union*,
    424 F.3d 397 (4th Cir. 2005) ...................................................................................23

*El v. Max Daetwyler Corp.*,
    No. 3:09-cv-415, 2011 WL 1769805 (W.D.N.C. May 9, 2011)...............................16

*Eslami v. Global One Commc'ns, Inc.*,
    No. 174096, 1999 WL 51864 (Va. Cir. Ct. Jan. 11, 1999)......................................27

*Evans v. Int'l Paper Co.*,
    936 F.3d 183 (4th Cir. 2019) .....................................................................................9

*Evans v. Techs. Applications & Serv. Co.*,
    80 F.3d 954 (4th Cir. 1996) .....................................................................................18

*Faragher v. City of Boca Raton*,
    524 U.S. 775 (1998)............................................................................................20, 21

*Fischer v. Andersen Corp.*,
    483 F.3d 553 (8th Cir. 2007) ...................................................................................10

*Fletcher v. Philip Morris USA Inc.*,
    No. 3:09-cv-284, 2009 WL 2067807 (E.D. Va. July 14, 2009)...............................15

*Gandhi v. Brownlee,*
No. 4:03-cv-141, 2004 WL 3241661 (E.D. Va. July 2, 2004)............................................8, 11

*Gaston v. Anson Cnty. Sch. Dist.,*
No. 3:17-cv-232, 2017 WL 7790224 (W.D.N.C. Aug. 23, 2017) ...........................................17

*Guillen v. Esper,*
No. 1:19-cv-1206, 2020 WL 3965007 (E.D. Va. July 13, 2020)...........................................3, 22

*Guirkin v. CMH Physician Servs., LLC,*
No. 3:20-cv-59, 2020 WL 6829769 (E.D. Va. Nov. 20, 2020) .................................................15

*Harris v. Forklift Sys., Inc.,*
510 U.S. 17 (1993)...................................................................................................................19

*Hartsell v. Duplex Prods., Inc.,*
123 F.3d 766 (4th Cir. 1997) ...................................................................................................21

*Haywood v. Locke,*
387 F. App'x 355 (4th Cir. 2010) ............................................................................................17

*Heiko v. Colombo Sav. Bank, F.S.B.,*
434 F.3d 249 (4th Cir. 2006) .....................................................................................................8

*Hice v. Mazzella Lifting Techs., Inc.,*
589 F. Supp. 3d 539 (E.D. Va. 2022) .......................................................................................26

*Hill v. Panetta,*
No. 1:12-cv-350, 2012 WL 12871178 (E.D. Va. Oct. 4, 2012) ..............................................21

*Holleman v. Colonial Heights Sch. Bd.,*
854 F. Supp. 2d 344 (Feb. 23, 2012) .......................................................................................18

*Hooten v. Walmart Inc.,*
No. 5:20-cv-697, 2021 WL 1234507 (E.D.N.C. Apr. 1, 2021) ..........................................20, 21

*Jackson v. Girl Scouts Council of Colonial Coast,*
No. 4:18-cv-129, 2019 WL 13295813 (E.D. Va. Dec. 20, 2019) ............................................13

*Kilgore v. Va. Dep't of Transp.,*
No. 2:12-cv-15, 2013 WL 718882 (W.D. Va. Feb. 27, 2013) ..................................................17

*Knight v. McCarthy,*
439 F. Supp. 3d 744 (E.D. Va. 2020) .......................................................................................15

*Koontz v. Jording,*
No. 3:18-cv-380, 2019 WL 1339595 (E.D. Va. Mar. 25, 2019)...............................................28

*Laurent-Workman v. Wormuth,*
54 F.4th 201 (4th Cir. 2022) ....................................................................................................21

*Lee v. Wade,*
No. 3:15-37, 2015 WL 5147067 (E.D. Va. Aug. 31, 2015) .....................................................22

*Leonard v. Tenet*,
No. 1:03-cv-1176, 2004 WL 3688406 (E.D. Va. June 30, 2004)..............................22

*Lindsay-Felton v. FQSR, LLC*,
352 F. Supp. 3d 597 (E.D. Va. 2018) ................................................................9, 20

*Lundberg v. Delta Response Team, LLC*,
No. 3:23-cv-42, 2024 WL 1676806 (W.D. Va. Apr. 18, 2024)...........................15

*Martin v. Stateside Assocs., Inc.*,
No. 1:23-cv-1076, 2025 WL 209816 (E.D. Va. Jan. 15, 2025)..............................9

*Masco Contractor Servs. E., Inc. v. Beals*,
279 F. Supp. 2d 699 (E.D. Va. 2003) ...............................................................4, 28

*McCleary-Evans v. Md. Dep't of Transp., State Highway Admin.*,
780 F.3d 582 (4th Cir. 2015) ......................................................2, 13, 17, 18, 19

*McIver v. Bridgestone Ams., Inc.*,
42 F.4th 398 (4th Cir. 2022) ...............................................................................19

*McKenzie-El v. Am. Sugar Ref., Inc.*,
No. 21-1089, 2021 WL 5412341 (4th Cir. Nov. 19, 2021) ................................18

*Melendez v. Bd. of Educ. for Montgomery Cnty.*,
711 F. App'x 685 (4th Cir. 2017) .........................................................................9

*Miller v. Batesville Casket Co.*,
312 F. App'x 404 (2d Cir. 2009) ........................................................................10

*Mirshahi v. Patient First Richmond Med. Grp., LLC*,
No. 3:23-cv-495, 2024 WL 3823991 (E.D. Va. Aug. 13, 2024) .........................25

*Monk v. Potter*,
723 F. Supp. 2d 860 (E.D. Va. 2010) ..................................................................17

*Nnadozie v. Genesis HealthCare Corp.*,
730 F. App'x 151 (4th Cir. 2018) ........................................................................10

*Okebata v. Dep't of Def.*,
No. 3:22-cv-50, 2022 WL 3754201 (E.D. Va. July 29, 2022).......................14, 22

*Oncale v. Sundowner Offshore Servs., Inc.*,
523 U.S. 75 (1998)...............................................................................................20

*Pearson v. Prince William Cnty. Sch. Bd.*,
No. 1:22-cv-377, 2023 WL 2506415 (E.D. Va. Mar. 14, 2023).........................28

*Penn. State Police v. Suders*,
542 U.S. 129 (2004)..............................................................................................12

*Perkins v. Int'l Paper Co.*,
936 F.3d 196 (4th Cir. 2019) .........................................................................1, 22

*Perret v. Nationwide Mut. Ins. Co.*,
   770 F.3d 336 (5th Cir. 2014) ....................................................................................10

*Peterson v. DC Mech., LLC*,
   No. 1:22-cv-784, 2022 WL 22695554 (E.D. Va. Aug. 24, 2022) ...................................4, 28

*Racklin v. Zeta Glob. Corp.*,
   628 F. Supp. 3d 625 (E.D. Va. 2022) ........................................................................3, 24

*Reynolds v. Dep't of Army*,
   439 F. App'x 150 (3d Cir. 2011) ...............................................................................10

*Robinson v. Fred Store, Inc.*,
   No. 1:10-2847, 2013 WL 4505406 (D.S.C. Aug. 22, 2013)...........................................13

*Robinson v. Priority Auto. Huntersville, Inc.*,
   70 F.4th 776 (4th Cir. 2023) ....................................................................................16

*Rome v. Dev. Alternatives, Inc.*,
   587 F. App'x 38 (4th Cir. 2014) ................................................................................12

*Rowan v. Tractor Supply Co.*,
   559 S.E.2d 709 (Va. 2002)......................................................................................3, 26

*Ruddy v. Bluestream Prof. Serv., LLC*,
   444 F. Supp. 3d 697 (E.D. Va. 2020) .........................................................................23

*Saville v. Int'l Bus. Machs. Corp.*,
   188 F. App'x 667 (10th Cir. 2006) .............................................................................11

*Shetty v. Hampton Univ.*,
   No. 4:12-cv-58, 2014 WL 280448 (E.D. Va. Jan. 24, 2014).........................................11

*Sillah v. Burwell*,
   244 F. Supp. 3d 499 (D. Md. 2017) ...........................................................................19

*Skinski v. Planar Sys., Inc.*,
   No. 1:23-cv-1032, 2024 WL 2946968 (E.D. Va. June 11, 2024).....................................21

*Smith v. Strayer Univ. Corp.*,
   79 F. Supp. 3d 591 (E.D. Va. 2015) ...........................................................................11

*Spellman v. Sch. Bd. of City of Chesapeake*,
   No. 2:17-cv-635, 2018 WL 2085276, *R&R adopted*, 2018 WL 2015810 (E.D.
   Va. Apr. 30, 2018) .................................................................................................18

*Stone v. Univ. of Md. Med. Sys. Corp.*,
   855 F.2d 167 (4th Cir. 1988) ...............................................................................11, 12

*Stratton v. Bentley Univ.*,
   113 F.4th 25 (1st Cir. 2024)......................................................................................10

*Sunkins v. Hampton Rds. Connector Partners*,
   701 F. Supp. 3d 342 (E.D. Va. 2023) .........................................................................23

*Sure-Tan, Inc. v. NLRB*,
  467 U.S. 883 (1984) ..................................................................................................9

*Tattrie v. CEI-Roanoke, LLC*,
  No. 7:23-cv-79, 2023 WL 4186383 (W.D. Va. June 26, 2023) .............................26

*Tolle v. Rockwell Collins Control Techs., Inc.*,
  No. 1:20-cv-174, 2020 WL 3316984 (E.D. Va. June 18, 2020) ....................8, 9, 12

*Tomov v. Micron Tech. Inc.*,
  No. 1:24-cv-960, 2024 WL 4806489 (E.D. Va. Nov. 15, 2024) ............................23

*Tutt v. Wormuth*,
  No. 19-2480, 2021 WL 4076729 (4th Cir. Sept. 8, 2021) ......................................14

*Univ. of Tex. Sw. Med. Ctr. v. Nassar*,
  570 U.S. 338 (2013) ................................................................................................23

*Verrier v. Sebelius*,
  No. CCB-09-402, 2010 WL 1222740 (D. Md. Mar. 23, 2010) ................................9

*Vinson v. City of Richmond*,
  No. 3:22-cv-698, 2023 WL 4850172 (E.D. Va. July 28, 2023) .........................3, 26

*Webster v. Chesterfield Cnty. Sch. Bd.*,
  38 F.4th 404 (4th Cir. 2022) ...................................................................................20

*Webster v. Johnson*,
  26 F. App'x 583 (4th Cir. 2005) ..............................................................................22

*Willett v. Emory & Henry Coll.*,
  569 F.2d 212 (4th Cir. 1978) ...............................................................................2, 13

*Williams v. Giant Food Inc.*,
  370 F.3d 423 (4th Cir. 2004) ....................................................................................9

*Williams v. TMS Int'l, LLC*,
  No. 3:21-cv-260, 2021 WL 4071868 (E.D. Va. Sept. 7, 2021) ....................3, 25, 26

*Woods v. City of Greensboro*,
  855 F.3d 639 (4th Cir. 2017) ...................................................................................14

*Zeh v. Truist Bank*,
  No. 1:20-cv-455, 2021 WL 1225984 (E.D. Va. Mar. 31, 2021) ......................11, 12

**Statutes**

42 U.S.C. § 2000e-2(a) ....................................................................................................13

Va. Code § 40.1-27 .....................................................................................................26, 28

Va. Code § 40.1-51.2:1 ....................................................................................................25

Va. Code § 40.1-51.2:2 ....................................................................................................25

**Rules**

Fed. R. Civ. P. 11(b)(3)..................................................................................................8

**Regulations**

16 Va. Admin. Code § 25-60-110.................................................................................25

Defendants Amazon.com, Inc., and Amazon Web Services, Inc. (collectively, "Amazon"), by and through their undersigned counsel, respectfully submit this Memorandum of Law in support of their Motion to Dismiss the Second Amended Complaint filed by Plaintiff Brandie L. Hensley ("Plaintiff").

## INTRODUCTION

Plaintiff is a former Amazon Regional Safety Manager who resigned from her position rather than attempting to complete Amazon's Pivot Program—a performance improvement plan. *See* Second Am. Compl. and Jury Demand ("SAC") ¶¶ 10, 33, ECF No. 27 (Mar. 21, 2025). In all three complaints Plaintiff has filed in this action, she has claimed that Amazon violated Title VII by subjecting her to discrimination, harassment, and retaliation based on her "gender, sexual orientation, and marital status." *Id.* ¶¶ 35–38; *see also* ECF Nos. 1, 5. In her most recent pleading, Plaintiff adds claims for "unlawful termination in violation of public policy" and "interference with prospective employment/economic advantage." SAC ¶¶ 40–53. Even accepting Plaintiff's barebones factual allegations as true, she fails to state an actionable claim under any of these legal theories. Accordingly, the SAC should be dismissed.

*First*, as a threshold matter, Plaintiff cannot state a claim for unlawful termination in violation of Title VII or public policy because her employment was not, in fact, terminated. *See* SAC ¶ 33. To the extent that Plaintiff claims she was constructively discharged because she chose to resign instead of participating in the Pivot Program, she does not (and cannot) allege that Amazon made her working conditions so intolerable that she reasonably concluded that she had "*no choice* but to resign." *Perkins v. Int'l Paper Co.*, 936 F.3d 196, 212 (4th Cir. 2019) (quotation marks omitted). To the contrary, courts consistently hold that an employee's placement on a performance improvement plan does not support a constructive discharge claim, *see, e.g.*, *Copes*

*v. Johns Hopkins Univ. Applied Physics Lab'y, LLC*, No. RDB-23-2306, 2025 WL 19987, at *4 (D. Md. Jan. 2, 2025) (granting motion to dismiss), and Plaintiff offers no factual allegations to suggest that the Pivot Program at issue here was "impossible" or otherwise compelled her resignation, *see* SAC ¶ 5.

*Second*, Title VII does not recognize "marital status" as a protected characteristic. *See Willett v. Emory & Henry Coll.*, 569 F.2d 212, 213 (4th Cir. 1978). Therefore, Plaintiff cannot state a claim for discrimination or a hostile work environment due to her marital status.

*Third*, Plaintiff fails to state a claim for Title VII discrimination because, other than her supposed "constructive discharge," her grievances amount to conclusory assertions of "unjustified criticism" with no plausible relationship to her gender or sexual orientation. SAC ¶ 35. Plaintiff speculates that her former supervisors "hate[] gay people," but her only support for this inflammatory accusation is an allegation that she once perceived an "awkward pause" during a single conversation at an unspecified time—potentially years before she allegedly faced unfair criticism or any other adverse employment action. *Id.* ¶¶ 21–22. These cursory allegations do not come close to "support[ing] a *reasonable inference* that [Plaintiff's supervisors] were motivated by bias." *McCleary-Evans v. Md. Dep't of Transp., State Highway Admin.*, 780 F.3d 582, 586 (4th Cir. 2015) (affirming dismissal of Title VII claim).

*Fourth*, Plaintiff's hostile work environment allegations fail to establish that her workplace was "permeated" with "severe or pervasive" harassment due to her gender or sexual orientation. *Carroll v. Amazon Data Servs., Inc.*, No. 1:21-cv-1177, 2022 WL 3161895, at *6 (E.D. Va. Aug. 8, 2022) (granting motion to dismiss). Plaintiff's disagreements with her supervisors' work-related criticisms "are not actionable under Title VII," and even if they were, the Court "cannot jump from the mere existence of criticism to the conclusion that the criticism was . . . motivated [by her gender

or sexual orientation]." *Guillen v. Esper*, No. 1:19-cv-1206, 2020 WL 3965007, at *14–15 (E.D. Va. July 13, 2020) (Brinkema, J.) (quotation marks omitted).

*Fifth*, Plaintiff's Title VII retaliation claims should be dismissed because, even in her own telling, she did not complain about alleged discrimination until *after* she had already entered the Pivot Program—thereby negating any inference of causation. *See Racklin v. Zeta Glob. Corp.*, 628 F. Supp. 3d 625, 655 (E.D. Va. 2022) (dismissing retaliation claims predicated upon decision to place plaintiff on a PIP "well before [she] had ever engaged in any protected activity").

*Sixth*, even if Plaintiff's employment *had* been terminated (it was not), she still fails to identify a public policy that would support an unlawful termination claim. Plaintiff alleges that her placement in the Pivot Program violated public policies that: (1) protect employees who raise safety concerns (i.e., Virginia's Occupational Safety and Health Program, or "VOSHP"), (2) forbid discrimination based on gender and sexual orientation (i.e., the Virginia Human Rights Act, or "VHRA"), and (3) prohibit "malicious[] interfer[ence]" with a former employee's attempts to find new employment (i.e., Virginia's anti-blacklisting law). SAC ¶ 40. However, the VOSHP and VHRA both "prescribe extensive remedial schemes that employees must follow" to vindicate their statutory rights and, therefore, provide the "exclusive remedy" for unlawful terminations. *Williams v. TMS Int'l, LLC*, No. 3:21-cv-260, 2021 WL 4071868, at *6 (E.D. Va. Sept. 7, 2021) (granting motion to dismiss public policy claims as preempted by the VOSHP); *Vinson v. City of Richmond*, No. 3:22-cv-698, 2023 WL 4850172, at *9 (E.D. Va. July 28, 2023) (same under the VHRA). Moreover, the anti-blacklisting law regulates employer conduct with respect to *former* employees whose employment has already ended, so Plaintiff cannot establish that the statute and its underlying public policy protects *current* employees from termination. *Rowan v. Tractor*

*Supply Co.*, 559 S.E.2d 709, 711 (Va. 2002) (an unlawful termination plaintiff must be "a member of [the] class of persons directly entitled to the protection enunciated by the public policy").

*Seventh*, Plaintiff's claim that Amazon interfered with her "prospective employment/economic advantage" is a last-ditch attempt to challenge Amazon's use of performance improvement plans altogether. SAC ¶¶ 45–53. Plaintiff asserts that her placement in the Pivot Program was "fraudulent" and, in itself, "interfered with her ability to obtain subsequent employment." *Id.* ¶ 6. In support, she once again relies on the anti-blacklisting law, *id.*, but that *criminal* statute "does not provide a private right of action." *Peterson v. DC Mech., LLC*, No. 1:22-cv-784, 2022 WL 22695554, at *2 (E.D. Va. Aug. 24, 2022) (Brinkema, J.) (granting motion to dismiss). Even construed as a common law tortious-interference claim, Plaintiff does not (and cannot) plausibly allege that Amazon *intentionally* interfered with a *specific* employment opportunity. SAC ¶¶ 9, 30; *see also Masco Contractor Servs. E., Inc. v. Beals*, 279 F. Supp. 2d 699, 709 (E.D. Va. 2003).

In short, despite having the opportunity to replead in response to *three* motions to dismiss, Plaintiff's SAC remains devoid of factual allegations that support any plausible claim for relief. For these reasons, and as explained further below, Amazon respectfully requests that the Court dismiss the SAC in its entirety and with prejudice.

## BACKGROUND

Solely for the purpose of this motion to dismiss, Amazon accepts as true the following allegations of fact:

Plaintiff, a gay woman, worked as a Regional Safety Manager for Amazon's cloud computing business until her resignation in spring 2023.  SAC ¶¶ 1, 3, 16.[1]  Throughout her tenure at Amazon, Plaintiff's supervisors expressed concerns regarding her "work and judgment on safety issues."  *Id.* ¶ 23.  Plaintiff contends that her work was actually "excellent," but her supervisors were "intent on discriminating against gay women in the field of workplace safety."  *Id.* ¶¶ 19, 31.

In her SAC, Plaintiff recalls attending a meeting with her supervisors in which "the group discussed their weekend plans with their families."  SAC ¶ 21.  After Plaintiff mentioned her wife and children, she perceived "an awkward pause."  *Id.*  Based on this single alleged interaction during her entire tenure at Amazon, Plaintiff asserts that all three of her supervisors "harbor hateful views that denigrate gay people."  *Id.* ¶ 22.

Plaintiff also accuses her supervisors of "[h]aving one standard for [her] and a different standard for heterosexual men."  SAC ¶¶ 24.  In support, Plaintiff alleges that her heterosexual male subordinate "received positive reviews and feedback" after giving a presentation, whereas Plaintiff received "negative feedback and unfair criticism" after she "made a substantially identical presentation."  *Id.* ¶ 23.

Ultimately, Plaintiff's supervisors determined that her performance was "deficient" and decided to place her in a "performance improvement program" (referred to by Amazon as a "Pivot Program").  SAC ¶¶ 26, 28.  Under the terms of the program, Plaintiff received the choice between:

---

[1] The SAC does not allege any specific dates with respect to Plaintiff's employment, nor does it allege the dates on which Plaintiff allegedly experience discrimination, harassment, or retaliation.

(1) attempting to improve her performance to meet specific "workplace goals"; or (2) accepting a separation package that provided "severance pay in exchange for a release of claims." *Id.* ¶ 26. Plaintiff "opted to enter the [P]ivot [P]rogram to buy time to find new employment." *Id.*

Shortly thereafter, Plaintiff retained counsel. SAC ¶ 31. Through her attorney, Plaintiff demanded that Amazon "rescind" her placement in the Pivot Program, complaining *for the first time* that she had experienced "discrimination, harassment, and retaliation." *Id.* ¶¶ 31–32.[2] She also accused Amazon of retaliating against her for "raising workplace safety concerns." *Id.* When it became clear that she would still be expected to complete the Pivot Program, Plaintiff decided to "accept alternative employment." *Id.* ¶ 33.

On July 25, 2023, Plaintiff filed an EEOC Charge that "assert[ed] claims Under Title VII." SAC ¶ 16. On June 14, 2024, the EEOC dismissed Plaintiff's Charge and issued a "right to sue" letter. *Id.* On September 12, 2024, Plaintiff filed a complaint in the United States District Court for the District of Columbia, asserting claims under Title VII. *See* ECF No. 1, ¶¶ 25–26. On December 13, 2024, Plaintiff amended her complaint to add claims under the District of Columbia Human Rights Act ("DCHRA"). *See* ECF No. 5. On January 6, 2025, Amazon moved to dismiss Plaintiff's Amended Complaint for lack of subject matter jurisdiction over her DCHRA claims, lack of personal jurisdiction, improper venue, and failure to state a claim upon which relief can be granted. *See* ECF No. 9. On January 31, 2025, the parties filed a consent motion requesting that the action be transferred to this Court and stipulating that Plaintiff's claims under the DCHRA should be dismissed with prejudice. *See* ECF. No 12.

---

[2] Plaintiff also alleges that another "openly gay woman" experienced "discrimination and harassment" at Amazon. *Id.* ¶ 31. However, she provides no additional details regarding this accusation. *Id.*

On February 19, 2025, the Court accepted the transfer of this case from the District of Columbia.  *See* ECF No. 14.  On February 27, the Court directed Amazon to either: (1) respond to Plaintiff's Amended Complaint by March 21, or (2) if Plaintiff filed an SAC on or before March 21, respond to the SAC within 14 days.  *See* ECF No. 21.  As directed, Amazon timely moved to dismiss the Amended Complaint on the evening of March 21.  *See* ECF No. 23.  Several hours later, Plaintiff filed the SAC, asserting virtually identical Title VII claims (Count I) and adding claims for "Unlawful Termination in Violation of Public Policy" (Count II) and "Interference with Prospective Employment/Economic Advantage" (Count III).  *See* ECF No. 27.

Once again, Amazon moves to dismiss.

## LEGAL STANDARDS

"To survive a motion to dismiss" under Rule 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quotation marks omitted).  A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Id.*  To meet this standard, the complaint must contain "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do."  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).  And while courts must assume the veracity of "well-pleaded factual allegations," they are not "bound to accept as true a legal conclusion couched as a factual allegation."  *Iqbal*, 556 U.S. at 678–79 (quotation marks omitted).  If the plaintiff's allegations fail to "nudg[e] [her] claims of invidious discrimination across the line from conceivable to plausible," the complaint must be dismissed.  *Id.* at 680 (quotation marks omitted).

## ARGUMENT

### A.    Plaintiff Fails to Allege That She Was Constructively Discharged.

"[A]n employee's voluntary resignation does not, as a matter of law, constitute an adverse employment action." *Tolle v. Rockwell Collins Control Techs., Inc.*, No. 1:20-cv-174, 2020 WL 3316984, at *6 (E.D. Va. June 18, 2020) (Brinkema, J.) (quotation marks omitted). Nonetheless, Plaintiff attempts to manufacture an adverse employment action for the purposes of her claims under Title VII and "public policy" by recasting her decision to "accept alternative employment" as a "constructive discharge." *See* SAC ¶¶ 32–33. This argument is meritless.[3]

Employee resignations "are presumed to be voluntary." *Gandhi v. Brownlee*, No. 4:03-cv-141, 2004 WL 3241661, at *10 (E.D. Va. July 2, 2004). However, a constructive discharge may occur "[w]here an employer deliberately makes an employee's working conditions intolerable and thereby forces [her] to quit [her] job." *Tolle*, 2020 WL 3316984, at *6 (quotation marks omitted) (granting motion to dismiss); *see also Heiko v. Colombo Sav. Bank, F.S.B.*, 434 F.3d 249, 262 (4th Cir. 2006) (a constructive discharge plaintiff must allege: "(1) that the employer's actions were deliberate, and (2) that working conditions were intolerable"); *Atkins v. Smyth Cnty. Va. Sch. Bd.*, 382 F. Supp. 3d 506, 518 n.5 (W.D. Va. 2019) ("The elements of a Virginia [public policy] constructive discharge claim are similar to those under Title VII," and a plaintiff must allege that "the employer's actions were deliberate and created intolerable working conditions"). "[I]ntolerability is assessed by the objective standard of whether a 'reasonable person' in the

---

[3] Occasionally, Plaintiff alleges that she was "unlawfully terminated." *See, e.g.*, SAC ¶ 10. Amazon assumes the word "terminated" is intended as a synonym for "constructively discharged," not as an assertion that Plaintiff was "fired" (which would be false). *See id.* ¶ 36 (speculating that the Pivot Program "*would* result in [Plaintiff] being labeled as having been fired for poor performance" (emphasis added)). Plaintiff could not, consistent with her Rule 11 obligations, allege that she was *fired*. *See* Fed. R. Civ. P. 11(b)(3).

employee's position would have felt <u>compelled</u> to resign . . . that is, whether [she] would have had <u>no choice</u> but to resign." *Tolle*, 2020 WL 3316984, at *7 (quoting *Evans v. Int'l Paper Co.*, 936 F.3d 183, 193 (4th Cir. 2019)). "[C]onstructive discharge claims are held to a high standard, and even truly awful working conditions may not rise to the level of constructive discharge." *Martin v. Stateside Assocs., Inc.*, No. 1:23-cv-1076, 2025 WL 209816, at *4 (E.D. Va. Jan. 15, 2025) (granting motion to dismiss and quoting *Lindsay-Felton v. FQSR, LLC*, 352 F. Supp. 3d 597, 606 (E.D. Va. 2018)); *cf. Sure-Tan, Inc. v. NLRB*, 467 U.S. 883, 894–95 (1984) (employer constructively discharged employees by reporting their undocumented status to the Immigration and Naturalization Service).

Plaintiff's constructive discharge claims are based solely upon her placement in Amazon's Pivot Program. *See* SAC ¶¶ 5, 35. But courts in this circuit consistently dismiss constructive discharge claims that are predicated upon negative performance evaluations and an employee's placement on a performance improvement plan ("PIP") like the Pivot Program. *See, e.g.*, *Williams v. Giant Food Inc.*, 370 F.3d 423, 434 (4th Cir. 2004) (affirming dismissal of constructive discharge claim because "poor evaluations [and] a feeling of being unfairly criticized . . . are not so intolerable as to compel a reasonable person to resign" (quotation marks omitted)); *Copes v. Johns Hopkins Univ. Applied Physics Lab'y, LLC*, No. RDB-23-2306, 2025 WL 19987, at *4 (D. Md. Jan. 2, 2025) (granting motion to dismiss constructive discharge claim based on employee's placement on an "Individual Improvement Plan"); *see also Melendez v. Bd. of Educ. for Montgomery Cnty.*, 711 F. App'x 685, 688 (4th Cir. 2017) (employee's "disagreement with her negative performance evaluations [did] not suffice to support a constructive discharge claim"); *Verrier v. Sebelius*, No. CCB-09-402, 2010 WL 1222740, at *11 n.12 (D. Md. Mar. 23, 2010) ("Although [the employee] was reprimanded and placed on an improvement plan . . . a pattern of

discipline or poor performance evaluations does not amount to an objectively intolerable working environment.").

In fact, the Fourth Circuit has held that an employee's placement on a PIP does not even establish a *hostile* work environment, much less an *objectively intolerable* one. *See Nnadozie v. Genesis HealthCare Corp.*, 730 F. App'x 151, 162–63 (4th Cir. 2018) (explaining that "[t]he 'intolerability' standard governing constructive discharge claims is more stringent than the 'severe and pervasive' standard for hostile work environment claims," and holding that the employee's placement on a PIP failed to satisfy either standard); *Dortch v. Cellco P'ship*, 770 F. App'x 643, 645–46 (4th Cir. 2019) (holding that the employee's placement "on a performance improvement plan ('PIP') did not create an abusive working environment [and, therefore,] the district court correctly rejected her constructive discharge claim as well").

These decisions also align with the overwhelming weight of authority from other circuits. *See Stratton v. Bentley Univ.*, 113 F.4th 25, 40 (1st Cir. 2024) ("Though [the plaintiff] feared the performance improvement plan set the stage for her firing, an apprehension of future termination is insufficient to establish constructive discharge.") (cleaned up); *Agnew v. BASF Corp.*, 286 F.3d 307, 310 (6th Cir. 2002) ("[C]riticism in performance reviews and institution of performance improvement plans, alone, do not constitute objectively intolerable conditions."); *Fischer v. Andersen Corp.*, 483 F.3d 553, 557 (8th Cir. 2007) ("An employee is not constructively discharged when an employer merely implements a [performance improvement plan]."); *Perret v. Nationwide Mut. Ins. Co.*, 770 F.3d 336, 339 (5th Cir. 2014) (rejecting argument that a performance improvement plan established a constructive discharge); *Reynolds v. Dep't of Army*, 439 F. App'x 150, 153–54 (3d Cir. 2011) (same); *Miller v. Batesville Casket Co.*, 312 F. App'x 404, 406–07 (2d

Cir. 2009) (same); *Saville v. Int'l Bus. Machs. Corp.*, 188 F. App'x 667, 670–71 (10th Cir. 2006) (same).

Here, Plaintiff's alleged "dissatisfaction with [Amazon's evaluation] process [and] the resulting [Pivot Program]" fail to state a claim for constructive discharge. *Shetty v. Hampton Univ.*, No. 4:12-cv-58, 2014 WL 280448, at *17 (E.D. Va. Jan. 24, 2014). At most, Plaintiff alleges that she was "given a choice of resigning or facing possible termination for cause." *Gandhi*, 2004 WL 3241661, at *10. But the Fourth Circuit has squarely rejected the argument that an employee who resigns to avoid termination (even *imminent* termination) has been constructively discharged. *See Decoster v. Becerra*, 119 F.4th 332, 340 (4th Cir. 2024) (affirming dismissal of Title VII claim and rejecting plaintiff's "theory of constructive discharge"); *Stone v. Univ. of Md. Med. Sys. Corp.*, 855 F.2d 167, 174 (4th Cir. 1988) (the fact "that the employee may perceive [her] only option to be resignation . . . is irrelevant"). Thus, "even assuming that [P]laintiff is correct that [she] would have been terminated for failing to improve [her] performance," her preemptive resignation fails to establish a constructive discharge. *Zeh v. Truist Bank*, No. 1:20-cv-455, 2021 WL 1225984, at *9 (E.D. Va. Mar. 31, 2021).

Even to the extent Plaintiff contends (without well-pled factual allegations) that the Pivot Program was "bogus and rigged," SAC ¶ 26, such unsupported conclusions still fail to state a claim, *see Shetty*, 2014 WL 280448, at *17 (employee's "own perception and characterization of the [PIP] process as a 'sham'" would not have compelled a reasonable person to resign); *see also Gandhi*, 2004 WL 3241661, at *11 ("Even assuming the PIP was . . . inappropriate, the Court cannot see how implementation of the PIP could be construed to create an intolerable workplace."); *Smith v. Strayer Univ. Corp.*, 79 F. Supp. 3d 591, 604 (E.D. Va. 2015) (an employee's "own naked opinion [about the validity of a PIP], without more, is not enough to establish a prima facie case

of . . . discrimination" (alterations in original; quotation marks omitted)).  In any event, Plaintiff concedes that she only "enter[ed] the pivot program to buy time" and quickly "accept[ed] alternative employment."  SAC ¶¶ 26, 33.  Because Plaintiff did not even attempt to meet Amazon's expectations before resigning, her assertions that completion of the Pivot Program was "unachievable" and that she would "wind up . . . fired for not meeting expectations" are entirely speculative.  *Id.* ¶¶ 26, 29; *see also Bristow v. Daily Press, Inc.*, 770 F.2d 1251, 1255 (4th Cir. 1985) ("[Employment discrimination laws] cannot be transformed into a palliative for every workplace grievance, real or imagined, by the simple expedient of quitting."); *Penn. State Police v. Suders*, 542 U.S. 129, 147 (2004) ("[U]nless conditions are beyond 'ordinary' discrimination, a complaining employee is expected to remain on the job while seeking redress." (quotation marks omitted)); *Rome v. Dev. Alternatives, Inc.*, 587 F. App'x 38, 40 (4th Cir. 2014) ("[B]ecause the claim of constructive discharge is so open to abuse by those who leave employment of their own accord, it must be carefully cabined, and . . . a feeling of being unfairly criticized [is] not so intolerable as to compel a reasonable person to resign" (quotation marks omitted)).

Put simply, even if Plaintiff's resignation may have been "the wisest or best decision," she has not alleged any facts to suggest that Amazon deliberately created a work environment that was so objectively intolerable that she "had <u>no choice</u> but to resign."  *Tolle*, 2020 WL 3316984, at *7 (quotation marks omitted).  Rather, the SAC shows that—at most—Plaintiff decided that accepting new employment was the better of two "comparably unpleasant alternatives."  *Zeh*, 2021 WL 1225984, at *9 (quoting *Stone*, 855 F.2d at 174).  Because this *choice* amounts to a voluntary resignation, Plaintiff cannot allege that she was constructively discharged.

**B.    Plaintiff Fails To State A Claim Under Title VII.**

  **1.    *Title VII Does Not Recognize "Marital Status" As A Protected Characteristic.***

  Plaintiff alleges discrimination based on her gender, sexual orientation, and "marital status." SAC ¶ 35. However, "marital status is not a protected classification under Title VII." *Robinson v. Fred Store, Inc.*, No. 1:10-2847, 2013 WL 4505406, at *4 (D.S.C. Aug. 22, 2013) (citing *Willett v. Emory & Henry Coll.*, 569 F.2d 212, 213 (4th Cir. 1978)); 42 U.S.C. § 2000e-2(a) (prohibiting discrimination based on "race, color, religion, sex, or national origin"); *see also Jackson v. Girl Scouts Council of Colonial Coast*, No. 4:18-cv-129, 2019 WL 13295813, at *4 n.2 (E.D. Va. Dec. 20, 2019) (explaining that the plaintiff's references to discrimination based on her marital status did not support a Title VII claim).[4] Therefore, to the extent that Plaintiff's Title VII claims are predicated upon her "marital status," those claims should be dismissed. *Robinson*, 2013 WL 4505406, at *4.[5]

  **2.    *Plaintiff Fails To State A Claim For Discrimination.***

  To state a claim for disparate treatment under Title VII, a plaintiff is "required to allege facts to satisfy the elements of a cause of action created by that statute"—i.e., that Amazon subjected her to an adverse employment action "*because of*" her protected characteristics. *McCleary-Evans v. Md. Dep't of Transp., State Highway Admin.*, 780 F.3d 582, 585 (4th Cir. 2015).

---

[4] Plaintiff also makes two passing references to discrimination based on her "family situation," s*ee, e.g.*, SAC ¶¶ 19, 22, but familial status is also not a protected characteristic under Title VII, *see* 42 U.S.C. § 2000e-2(a).

[5] Even if Title VII *did* prohibit discrimination based on "marital status" or "family situation," for the reasons discussed below, Plaintiff has not alleged any facts to support a plausible inference that she experienced discrimination or harassment "because of" her marriage or family.

Aside from her (meritless) constructive discharge theory, Plaintiff's discrimination claim boils down to two primary—and conclusory—assertions: (1) Amazon had "one standard for Plaintiff and a different standard for heterosexual men"; and (2) the "unfair criticism" of her work "ultimately culminated" in Plaintiff's placement in the Pivot Program.  SAC ¶¶ 24, 26.  Even if these vague allegations could be considered adverse employment actions, Plaintiff must allege sufficient facts to "nudge [her] claims of invidious discrimination across the line from conceivable to plausible.'"  *Iqbal*, 556 U.S. at 680 (quotation marks omitted); *see also Bing v. Brivo Sys., LLC*, 959 F. 3d 605, 617 (4th Cir. 2020) (noting that the court's "inquiry is whether [the plaintiff] alleges facts that plausibly state a violation of Title VII 'above a speculative level'"); *Alston v. Anderson*, No. 3:21-cv-733, 2023 WL 416197, at *6 (E.D. Va. Jan. 25, 2023).  Plaintiff can satisfy this burden by alleging either direct evidence of discrimination, *Okekata v. Dep't of Def.*, No. 3:22-cv-50, 2022 WL 3754201, at *3 (E.D. Va. July 29, 2022), or "comparator evidence or other indicia of discrimination," *Tutt v. Wormuth*, No. 19-2480, 2021 WL 4076729, at *2 (4th Cir. Sept. 8, 2021) (quoting *Woods v. City of Greensboro*, 855 F.3d 639, 647 (4th Cir. 2017)).

Here, Plaintiff alleges in conclusory fashion that Amazon took adverse employment actions against her "based on her gender, sexual orientation, and marital status," SAC ¶ 35, but she "does not assert facts establishing the plausibility of that allegation," *Coleman v. Md. Ct. of Appeals*, 626 F.3d 187, 191 (4th Cir. 2010), *aff'd*, 566 U.S. 30 (2012).  Plaintiff's allegations are insufficient for two primary reasons: she has not alleged any direct evidence of discrimination, nor has she adequately alleged that similarly situated comparators were treated differently.

*First*, Plaintiff alleges no facts directly showing that she was subjected to discrimination. She does not, for example, allege that any of her supervisors or coworkers ever made negative or offensive comments regarding her (or anyone else's) gender or sexual orientation, let alone any

14

such comments tied to alleged adverse employment actions. *See Knight v. McCarthy*, 439 F. Supp. 3d 744, 756 n.22 (E.D. Va. 2020) ("Discriminatory statements standing alone are insufficient to state a claim; a plaintiff must also show a nexus between the discriminatory statements and the employment action." (quotation marks omitted)); *cf. Lundberg v. Delta Response Team, LLC*, No. 3:23-cv-42, 2024 WL 1676806, at *5 (W.D. Va. Apr. 18, 2024) (allegations that the plaintiff's supervisor made negative comments about her bisexuality, such as questioning her "lifestyle choices" and calling her an "'odd duck,'" were sufficient to state a claim for sexual orientation discrimination). Instead, Plaintiff accuses her supervisors of "harbor[ing] hateful views that denigrate gay people" and being "intent on discriminating against gay women" solely because she once mentioned her wife and subjectively perceived an "awkward pause." SAC ¶¶ 21–22, 31. This is insufficient. *See Debiasi v. AARP*, No. 3:24-cv-115, 2024 WL 5108452, at *4 (E.D. Va. Dec. 13, 2024) (granting motion to dismiss because the plaintiff "[did] not relate any of his allegations of discriminatory conduct to his [protected status] except in the most conclusory manner" (quotation marks omitted)).

Even if Plaintiff accurately perceived an "awkward pause," she offers no additional allegations to suggest that her supervisors were "uncomfortable" with her gender or sexual orientation. SAC ¶ 21. Nor does Plaintiff support her conclusory assertion that her supervisors' supposed discomfort (at some unknown point in time) infected any subsequent interactions with her *or* any subsequent decisions regarding her employment (potentially years later). *Id.* ¶¶ 21–22; *see also Fletcher v. Philip Morris USA Inc*., No. 3:09-cv-284, 2009 WL 2067807, at *6 (E.D. Va. July 14, 2009) ("[I]nference[s] drawn from conclusory allegations unsupported by any facts [are] prohibited by *Twombly* and *Iqbal*."); *cf. Guirkin v. CMH Physician Servs., LLC*, No. 3:20-cv-59, 2020 WL 6829769, at *7 (E.D. Va. Nov. 20, 2020) (allegations that the plaintiff was asked

"'pointed and irrelevant'" questions about his sexual orientation and same-sex spouse during an investigatory interview *the day before* he was fired supported an inference of discrimination). Indeed, even *overtly derogatory remarks* (as opposed to the momentary silence alleged by Plaintiff) cannot support an inference of discrimination "[u]nless the remarks . . . were related to the employment decision in question." *Brinkley v. Harbour Recreation Club*, 180 F.3d 598, 608 (4th Cir. 1999) (quotation marks omitted), *overruled on other grounds by Desert Palace, Inc. v. Costa*, 539 U.S. 90 (2003); *see also Robinson v. Priority Auto. Huntersville, Inc.*, 70 F.4th 776, 784 (4th Cir. 2023) (a supervisor's "stray or isolated derogatory remarks" do not support a reasonable inference of discrimination, particularly where the remarks are not even "facially . . . discriminatory" (quotation marks omitted)).  And even if Plaintiff sincerely believes in the chain of events she has constructed, "[s]peculation and conjecture that the decision makers in this case were motivated by her [gender or sexual orientation] are insufficient as they raise a mere possibility of discrimination rather than the plausibility which is necessary to support an inference of discrimination upon Rule 12(b)(6) review." *El v. Max Daetwyler Corp.*, No. 3:09-cv-415, 2011 WL 1769805, at *7 (W.D.N.C. May 9, 2011).

*Second*, Plaintiff's threadbare allegations about "[h]eterosexual male employees" who were allegedly treated differently, SAC ¶¶ 23–25, do not support an inference of discrimination because they "[f]ai[l] to establish a plausible basis for believing that [Plaintiff and any heterosexual men] were actually similarly situated or that [gender or sexual orientation were] the true basis for [their allegedly disparate treatment]." *Coleman*, 626 F.3d at 191.  Plaintiff's only specific "example" of a supposed comparator is her allegation that she and a heterosexual male subordinate were "treated very differently" after giving "substantially identical presentation[s]." SAC ¶ 23. But Plaintiff does not allege—nor could she—that she and her own subordinate were "similar in

16

all relevant respects," meaning that they had the "same supervisor, were subject to the same standards and engaged in the same conduct without such differentiating or mitigating circumstances that would distinguish their conduct or the employer's treatment of them for it." *Haywood v. Locke*, 387 F. App'x 355, 359 (4th Cir. 2010) (cleaned up); *Kilgore v. Va. Dep't of Transp.*, No. 2:12-cv-15, 2013 WL 718882, at *4 (W.D. Va. Feb. 27, 2013) (granting motion to dismiss and explaining that "employees in supervisory positions will almost never be considered similarly situated to their subordinates for disparate treatment purposes"); *Monk v. Potter*, 723 F. Supp. 2d 860, 877 (E.D. Va. 2010) ("[T]wo employees who do not report to the same supervisor, do not have the same job title, or do not have the same responsibility level, are not similarly situated.").

Moreover, Plaintiff offers no specific facts to elaborate on the nature of her supervisors' differing feedback or why it was unjustified, leaving only "speculation [to] fill the gaps." *McCleary-Evans*, 780 F.3d at 585–86 (affirming dismissal of Title VII claim because the plaintiff "alleged no factual basis" for comparing her and other applicants' interview performance or suitability for the position in question); *see also Gaston v. Anson Cnty. Sch. Dist.*, No. 3:17-cv-232, 2017 WL 7790224, at *3 (W.D.N.C. Aug. 23, 2017) (granting motion to dismiss because the complaint was "devoid of facts related to the circumstances" in which a supervisor "signed off" on a form for a white employee "with no problem" but gave a Black employee "trouble" (quotation marks omitted)).  For instance, Plaintiff does not explain whether her supervisors provided contradictory feedback about the two presentations' "substantially identical" content, as opposed to individualized criticism of her delivery, organization, or preparedness.  *See* SAC ¶ 23.  And on both points—content and substance—it would be unreasonable to assume that Plaintiff and her subordinate were held to the same standards.  Nonetheless, Plaintiff simply asserts that the

feedback she received was "negative" and "unfair." *Id.* Without more, these conclusory allegations "d[o] not alone support a *reasonable inference* that [her supervisors] were motivated by bias." *McCleary-Evans*, 780 F.3d at 586; *see also Carroll v. Amazon Data Servs., Inc.*, No. 1:21-cv-01177, 2022 WL 3161895, at *5 (E.D. Va. Aug, 8, 2022) (granting motion to dismiss and explaining: "While [the plaintiff] contends that her white male coworkers did not receive the same criticisms [as her,] comparing the lack of criticism of coworkers alone is insufficient to establish a plausible basis for believing [discriminatory animus] was the true basis for [her supervisor's] critiques."); *Evans v. Techs. Applications & Serv. Co.*, 80 F.3d 954, 960 (4th Cir. 1996) ("[A plaintiff's] unsubstantiated allegations and bald assertions concerning her own qualifications and the shortcomings of her co-workers fail[ed] to . . . show discrimination.").[6]

As for Plaintiff's vague allegations about unidentified heterosexual men who were held to a "different" standard, SAC ¶ 35, Plaintiff offers no allegations showing that these men were "similar in all relevant respects." *Spellman v. Sch. Bd. of City of Chesapeake*, No. 2:17-cv-635, 2018 WL 2085276, at *7 (E.D. Va. Apr. 5, 2018) (recommending dismissal of Title VII claim because the plaintiff "fail[ed] to provide any further detail beyond the fact that [the alleged comparator] is white and [the plaintiff] is black"), *R&R adopted*, 2018 WL 2015810 (E.D. Va.

---

[6] Plaintiff also asserts—without providing any detail—that another "openly gay woman" was "subjected to discrimination and harassment" at Amazon. SAC ¶ 31. Although Plaintiff alludes to having "specific, compelling information" about this employee, she fails to include that information in the SAC. *Id.* ¶ 37. The Court "need not accept" Plaintiff's "legal conclusions and bare assertions" about this other employee because they are "devoid of further factual enhancement." *McKenzie-El v. Am. Sugar Ref., Inc.*, No. 21-1089, 2021 WL 5412341, at *1 (4th Cir. Nov. 19, 2021) (quotation marks omitted). Even accepting Plaintiff's unsupported allegation that this employee may have complained about "mistreatment" (although *not* discrimination or harassment), SAC ¶ 31, a court "may not reasonably find discrimination when it can only speculate on the *ipse dixit* that complaints by [two] individuals of [the same sexual orientation] mean that the offending conduct complained of must have been motivated by [their sexual orientation]," *Holleman v. Colonial Heights Sch. Bd.*, 854 F. Supp. 2d 344, 352 (Feb. 23, 2012).

Apr. 30, 2018).  As with her subordinate, Plaintiff does not plead "facts showing [that any other] more favorably treated co-workers were true comparators in that the co-workers held the same position, performed the same work, and were supervised by the same individuals."  *Sillah v. Burwell*, 244 F. Supp. 3d 499, 512–13 (D. Md. 2017) (granting motion to dismiss).  Because Plaintiff does not articulate *how* any heterosexual men were similarly situated to her, their allegedly disparate treatment cannot support a plausible inference of discrimination.  *See Booth v. Cnty. Exec.*, 186 F. Supp. 3d 479, 486 (D. Md. 2016) ("[A] complaint that merely alleges a co-worker is similarly situated without providing facts to substantiate that [conclusion] fails to state a claim for discrimination.").  To the contrary, Plaintiff's unsupported assertion that she was "held to more onerous and rigorous standards [because heterosexual men] were not disciplined or placed on PIPs . . . amounts to little more than speculation" and, therefore, does nothing to nudge her claim over the line of plausibility.  *Sillah*, 244 F. Supp. 3d at 512–13.

In sum, Plaintiff was required to do more than plead facts that are merely "*consistent* with discrimination."  *McCleary-Evans*, 780 F.3d at 586.  However, she offers no facts to support a plausible inference that her supervisors harbored discriminatory animus—much less acted upon it—or that she was treated differently than similarly situated heterosexual men.  Accordingly, Plaintiff's theory of discrimination "stop[s] short of the line between possibility and plausibility of entitlement to relief," and the Court should dismiss her discrimination claim.  *Id.* (quoting *Twombly*, 550 U.S. at 557).

### 3.    *Plaintiff's Hostile Work Environment Claim Is Equally Meritless.*

For similar reasons, Plaintiff fails to allege that her workplace was "permeated with discriminatory intimidation, ridicule, and insult that [was] sufficiently severe or pervasive to alter the conditions of [her] employment and create an abusive working environment."  *McIver v. Bridgestone Ams., Inc.*, 42 F.4th 398, 407 (4th Cir. 2022) (quoting *Harris v. Forklift Sys., Inc.*, 510

U.S. 17, 21 (1993)).  Title VII is not a "general civility code," so Plaintiff's complained-of conduct must be "extreme."  *Faragher v. City of Boca Raton*, 524 U.S. 775, 788 (1998) (quotation marks omitted).  And, of course, "Title VII . . . is directed only at actions that occur 'because of' one of [the plaintiff's] protected statuses."  *Lindsay-Felton*, 352 F. Supp. 3d at 601 (quoting *Oncale v. Sundowner Offshore Servs., Inc.*, 523 U.S. 75, 80 (1998)).  Plaintiff does not come close to meeting this "'high bar.'"  *Webster v. Chesterfield Cnty. Sch. Bd.*, 38 F.4th 404, 414 (4th Cir. 2022).

*First*, Plaintiff's vague allegations that her supervisors "unfairly criticized [her] work" and "treated [her] differently in meetings and day-to-day workplace interactions" do not rise to the level of actionable harassment.  *See* SAC ¶¶ 23–24; *Buchhagen v. ICF Int'l, Inc.*, 545 F. App'x 217, 219 (4th Cir. 2013) (affirming dismissal of hostile work environment claim because allegations of supervisors "unfairly scrutinizing and criticizing" the plaintiff fell "far short of being severe or pervasive enough to establish an abusive environment").  "[T]he Fourth Circuit has made clear that employment laws are not intended to govern minor workplace disagreements or personality conflicts between coworkers," so allegations of "nitpicking, micromanaging . . . and pretextual write-ups are insufficient to create a hostile work environment."  *Carroll*, 2022 WL 3161895, at *6 (collecting cases and dismissing hostile work environment claim that was predicated upon "increased criticism" of the plaintiff and her placement on a PIP); *Hooten v. Walmart Inc.*, No. 5:20-cv-697, 2021 WL 1234507, at *3 (E.D.N.C. Apr. 1, 2021) (collecting cases and holding that allegations of "micromanagement" by "overly critical" supervisors do not state a claim for a hostile work environment).  Even accepting Plaintiff's unsupported conclusion that she was held to a different standard than "heterosexual men," SAC ¶ 24, "[s]uch general allegations" of differential treatment "do not suffice to establish an actionable claim of harassment," *Carter v. Ball*, 33 F.3d 450, 461–62 (4th Cir. 1994); *Cox v. Rumsfeld*, 369 F. Supp. 2d 748, 758 (E.D. Va.

2005) (Brinkema, J.) (holding that, even if a supervisor's "strict supervision [was] targeted at [the] plaintiff as a female," such treatment is not "sufficiently severe or pervasive to constitute a hostile work environment").

*Second*, Plaintiff's allegations fail for the additional reason that she has not alleged a plausible connection between these "ordinary tribulations of the workplace" and her gender or sexual orientation. *Faragher*, 524 U.S. at 788 (quotation marks omitted). "[A] plaintiff must allege 'that her protected characteristic under Title VII was the 'but for' cause of the alleged harassment.'" *Skinski v. Planar Sys., Inc.*, No. 1:23-cv-1032, 2024 WL 2946968, at *5 (E.D. Va. June 11, 2024) (quoting *Laurent-Workman v. Wormuth*, 54 F.4th 201, 210 (4th Cir. 2022)); *see also Hartsell v. Duplex Prods., Inc.*, 123 F.3d 766, 772 (4th Cir. 1997) ("We have made clear that only harassment that occurs because of the victim's [protected status] is actionable"). The SAC does not identify a single comment—hostile or otherwise—from Plaintiff's supervisors or coworkers that related to her gender or sexual orientation. *See Hill v. Panetta*, No. 1:12-cv-350, 2012 WL 12871178, at *9 (E.D. Va. Oct. 4, 2012) (dismissing hostile work environment claim because the plaintiff failed to allege "a single utterance, action, or comment related to her gender or race, let alone an utterance or act of such severity to rise to the level of a colorable claim").[7]  In other words, "[a]lthough the [SAC] includes a laundry-list of [Plaintiff's] workplace grievances[,] there are no allegations from which one could reasonably infer that any of [her] grievances have any connection whatsoever to [her protected statuses]." *Guillen v. Esper*, No. 1:19-cv-1206, 2020

---

[7] Even if the Court accepts Plaintiff's inference that the "awkward pause" she perceived after mentioning her wife (on one occasion at an unknown time) suggested that her supervisors felt "uncomfortable with [her] and [her] personal life," SAC ¶ 21, an "'uncomfortable' environment . . . is a far cry from the severity required to state a colorable hostile work environment claim." *Hill*, 2012 WL 12871178, at *9 n.7; *see also Hooten*, 2021 WL 1234507, at *3 ("[R]ude treatment, even by a supervisor, is not enough to sustain a hostile work environment claim.").

WL 3965007, at *14–15 (E.D. Va. July 13, 2020) (cleaned up) (granting motion to dismiss). As a result, Plaintiff asks the Court to "blindly ascribe" her protected characteristics to her "ordinary conflict." *Leonard v. Tenet*, No. 1:03-cv-1176, 2004 WL 3688406, at *10 (E.D. Va. June 30, 2004) (quotation marks omitted). Such conjecture is insufficient to state a viable harassment claim.

Thus, "although [Plaintiff] alleges that [her supervisors] frequently criticized and 'nitpicked' her, a court 'cannot jump from the mere existence of criticism to the conclusion that the criticism was . . . motivated [by her protected statuses].'" *Guillen*, 2020 WL 3965007, at *14 (quoting *Webster v. Johnson*, 26 F. App'x 583, 587–88 (4th Cir. 2005)). Because Plaintiff failed to plead any facts from which to reasonably infer that she experienced actionable harassment based on her gender or sexual orientation, her hostile work environment claim must be dismissed.

### 4.    *Plaintiff's Allegations Negate Any Inference Of Retaliation.*

A plaintiff must allege three elements to state a claim for Title VII retaliation: (1) she engaged in a statutorily protected activity; (2) her employer subsequently took a "materially adverse action" against her; and (3) a causal connection existed between the protected activity and the adverse action. *See Perkins*, 936 F.3d at 213.[8]   Here, Plaintiff advances two theories of retaliation—both of which fail.

*First*, Plaintiff appears to suggest that Amazon retaliated against her because she discussed her wife and children at work. *See* SAC ¶ 23. This claim fails at the starting gate. "[I]n the context

---

[8] Although a plaintiff need not plead a prima facie case of retaliation to survive a motion to dismiss, courts in this district routinely "look to the requirements of a prima facie case as a guide in assessing the plausibility of plaintiff's claim for relief." *Okebata*, 2022 WL 3754201, at *4 (quotation marks omitted); *see also, e.g.*, *Lee v. Wade*, No. 3:15-37, 2015 WL 5147067, at *5 (E.D. Va. Aug. 31, 2015) (explaining that a plaintiff must present allegations "sufficient to reasonably infer a *prima facie* case of retaliation," including "some factors that allow the court to infer causation" (quotation marks omitted)).

of a retaliation claim, a 'protected activity' may fall into two categories, opposition and participation." *E.E.O.C. v. Navy Fed. Credit Union*, 424 F.3d 397, 406 (4th Cir. 2005). "Oppositional" activities include "complain[ing] to . . . superiors about suspected violations of Title VII," whereas "participation" activities include "making a charge, testifying, or participating in an investigation under Title VII." *Sunkins v. Hampton Rds. Connector Partners*, 701 F. Supp. 3d 342, 358 (E.D. Va. 2023) (quotation marks omitted).[9]  On the other hand, an employee does not engage in protected activity merely by disclosing her protected status. *See, e.g.*, *Tomov v. Micron Tech. Inc.*, No. 1:24-cv-960, 2024 WL 4806489, at *4 (E.D. Va. Nov. 15, 2024) ("Making a religious accommodation request is not a protected activity.").  Here, Plaintiff did not *oppose* or *participate in* anything when she "shared that she spent the weekend with her wife and their children." SAC ¶ 21.  Accordingly, even if this conversation "reveal[ed]" Plaintiff's sexual orientation to her coworkers, *id.*, it does not provide the necessary predicate for a retaliation claim, *see DeMasters v. Carilion Clinic*, 796 F.3d 409, 418 (4th Cir. 2015) ("[T]he touchstone is whether the plaintiff[] . . . communicates to her employer a belief that the employer has engaged in . . . a form of employment discrimination[.]" (quotation marks omitted)).

*Second*, Plaintiff alleges that she "formally complained" to Amazon (via her attorney's demand letter) "[w]hile participating in the 'performance improvement plan.'"  *See* SAC ¶ 31. Even assuming Plaintiff's demand letter constitutes a protected activity and her placement in the Pivot Program constitutes a materially adverse employment action, the alleged sequence of events

---

[9] To be clear, Plaintiff's allegations that she was retaliated against for "raising workplace safety concerns" and briefly participating in Amazon's Pivot Program have nothing to do with Title VII. SAC ¶¶ 28, 31; *see Ruddy v. Bluestream Prof. Serv., LLC*, 444 F. Supp. 3d 697, 712 (E.D. Va. 2020) ("Protected activity does not include generalized . . . complaints unrelated to Title VII."). In fact, these allegations refute any inference that Plaintiff's limited protected activities under Title VII were the but-for cause of any alleged adverse actions. *See Univ. of Tex. Sw. Med. Ctr. v. Nassar*, 570 U.S. 338, 343 (2013) (requiring but-for causation for Title VII retaliation claims).

forecloses any inference of causation.  *See Racklin v. Zeta Glob. Corp.*, 628 F. Supp. 3d 625, 655 (E.D. Va. 2022) (employee failed to show causation between her placement on a PIP and her *subsequent* protected activity).  Plaintiff concedes she did not send a demand letter (the alleged protected activity) until *after* she was placed in the Pivot Program (the alleged adverse employment action).  SAC ¶ 31.  The admission that Plaintiff's placement in the Pivot Program preceded her demand letter precludes any inference that her demand letter caused Amazon to retaliate against her.  *See Buchhagen v. ICF Int'l, Inc.*, 650 F. App'x 824, 830 (4th Cir. 2016) (no inference of causation where the "decision to place [the employee] on a PIP . . . predate[d] her protected activity"); *U.S. ex rel. Cody v. ManTech Int'l, Corp.*, 746 F. App'x 166, 181 (4th Cir. 2018) (a retaliation plaintiff must allege "that [her] protected conduct 'changed' the 'status quo' in some fashion").  Perhaps recognizing that this timeline is fatal to her claim, Plaintiff also alleges that Amazon "refused" to remove her from the Pivot Program after she complained.  SAC ¶ 32.  But "[e]mployers need not suspend previously planned [actions in response to an employee's protected activity], and their proceeding along lines previously contemplated . . . is no evidence [whatsoever] of causality."  *Clark Cnty. Sch. Dist. v. Breeden*, 532 U.S. 268, 272 (2001).

Accordingly, Plaintiff has not alleged any facts to support a plausible inference that she experienced a materially adverse employment action *because* she engaged in a protected activity, and the Court should therefore dismiss her Title VII retaliation claim.

## C.    Plaintiff Cannot State A Claim For Unlawful Termination In Violation Of Public Policy.

In the latest iteration of her complaint, Plaintiff asserts a new claim for unlawful termination in violation of Virginia's public policy.  *See* SAC ¶¶ 39–44.  As a threshold matter, and as discussed above, Amazon did not terminate Plaintiff's employment (or constructively discharge her).  The Court should deny Plaintiff's unlawful *termination* claim on this basis alone.

24

Even if the Court were to ignore this fatal deficiency, Count II would still fail. Despite the "strong presumption that employment is at will," Virginia courts recognize a "narrow" exception in cases where an employee's "termination violates Virginia public policy as expressed in Virginia statute." *Mirshahi v. Patient First Richmond Med. Grp., LLC*, No. 3:23-cv-495, 2024 WL 3823991, at *2–5 (E.D. Va. Aug. 13, 2024) (citing *Bowman v. State Bank of Keysville*, 331 S.E.2d 797 (Va. 1985)). In her SAC, Plaintiff attempts to identify three public policies that Amazon supposedly violated by placing her in the Pivot Program, two of which derive from statutes that already provide the *exclusive* remedy for unlawful terminations (the VOSHP and the VHRA) and a third which does not contemplate protections against termination at all (Virginia's anti-blacklisting statute). In other words, none of these public policies supports a viable *Bowman* claim.

*First*, Plaintiff asserts that Virginia public policy protects employees from "retaliation for raising workplace safety concerns or refusing to go along with safety violations." SAC ¶ 40. In support, Plaintiff cites an administrative regulation promulgated to effectuate the VOSHP. *Id.*; *see also* 16 Va. Admin. Code § 25-60-110 (referring to Va. Code §§ 40.1-51.2:1 ("Discrimination against employee for exercising rights prohibited") and 40.1-51.2:2 ("Remedy for discrimination")). The VOSHP "prescribes an extensive remedial scheme that employees must follow when they believe their employer has discharged or discriminated against them for complaining about health and safety conditions at their workplace." *Williams v. TMS Int'l, LLC*, No. 3:21-cv-260, 2021 WL 4071868, at *6 (E.D. Va. Sept. 7, 2021). "[W]hen a statute creates a right and supplies a remedy for enforcing that right, [p]laintiffs cannot successfully bring a *Bowman* claim." *Id.* at *5 (citing *Carmack v. Va.*, 2019 WL 1510333, at *13–14 (W.D. Va. Apr. 5, 2019)). For this reason, "numerous Virginia courts have concluded that [the VOSHP] provides the *exclusive remedy* for claims of retaliatory discharge resulting from an employee's health and

safety complaints." *Id.* (emphasis added) (collecting cases). "In light of this precedent, Plaintiff's *Bowman* claim grounded on the public policy set forth in [the VOSHP or its supporting regulations] cannot proceed." *Id.* at *6 (granting motion to dismiss).

*Second*, Plaintiff points to Virginia's prohibition against discrimination based on gender and sexual orientation, apparently referring to the VHRA. *See* SAC ¶ 40. As with the VOSHP, "[t]he VHRA prescribes an extensive remedial scheme that employees must follow when relying on the rights and policies articulated in the Act." *Vinson v. City of Richmond*, No. 3:22-cv-698, 2023 WL 4850172, at *9 (E.D. Va. July 28, 2023) (quoting *Hice v. Mazzella Lifting Techs., Inc.*, 589 F. Supp. 3d 539, 553 (E.D. Va. 2022)). Therefore, Plaintiff "cannot work around the structure, limitations, and remedies of the VHRA by bringing a related *Bowman* claim." *Id.* (granting motion to dismiss); *Tattrie v. CEI-Roanoke, LLC*, No. 7:23-cv-79, 2023 WL 4186383, at *5 (W.D. Va. June 26, 2023) (same).

*Third*, Plaintiff asserts that Virginia public policy "prohibit[s] an employer from maliciously interfering with an employee's effort to obtain new employment." SAC ¶ 40. In support, she cites Virginia's anti-blacklisting law, *id.*, which imposes criminal liability on employers who "willfully and maliciously prevent . . . discharged employee[s] or . . . employee[s] who [have] voluntarily left from obtaining employment [elsewhere]," Va. Code § 40.1-27. However, this statute cannot support a *Bowman* claim because Plaintiff was not "clearly a member of [the] class of persons directly entitled to the protection enunciated by [the statute and its underlying] public policy." *Rowan v. Tractor Supply Co.*, 559 S.E.2d 709, 711 (Va. 2002). By its plain terms, the anti-blacklisting statute only affords protection to *former* employees. *See* Va. Code § 40.1-27 (regulating employer conduct "*after* [the employer] discharge[s the] employee" or "*after* [the] employee . . . voluntarily le[aves] the service of [the] employer." (emphasis added)).

"Nothing in *Bowman* or subsequent case law interpreting the *Bowman* doctrine suggests that an employer's action or inaction in the post-termination period, wholly unrelated to the reason for discharge, could give rise to a cause of action for wrongful discharge." *See Eslami v. Global One Commc'ns, Inc.*, No. 174096, 1999 WL 51864, at *3, *3 n.2 (Va. Cir. Ct. Jan. 11, 1999) (holding that employer's "failure to timely compensate [the plaintiff] *following* his termination" had no connection to his "*discharge*," and denying amendment to assert *Bowman* claim based on the anti-blacklisting law because "any such claim would suffer from the same infirmity"). In any event, Plaintiff does not allege any actions or inactions taken by Amazon after her resignation that interfered with her ability to find alternative employment or otherwise implicated the anti-blacklisting statute. Because the Court cannot infer a "causal link" between Plaintiff's placement in the Pivot Program and Virginia's public policy against blacklisting former employees, Plaintiff's reliance on Section 40.1-27 is wholly inapposite. *Id.*

Thus, even if Plaintiff had been discharged instead of resigning, she would still fail to state a claim for wrongful termination in violation of public policy. Because Plaintiff has not identified (or pled a plausible violation of) a public policy that can support a *Bowman* claim, Count II should be dismissed.

### D. Plaintiff's Interference With Prospective Employment Claim Is Frivolous.

Finally, in a tacit concession that she cannot plausibly allege that her *placement* in the Pivot Program was "motivated by discrimination or retaliation," Plaintiff attacks the program *itself* as "unattainable," "rigged," "bogus," "fake," and "not . . . legitimate." SAC ¶¶ 6, 48–50. Although Plaintiff speculates that the program would "falsely label[] [her] as having been fired for not meeting expectations," she also admits to quitting before she could find out. *Id.* ¶¶ 33, 36. Nonetheless, Plaintiff claims that her placement in the Pivot Program unlawfully "interfere[d] with

[her] ability to obtain new employment," once again relying on Virginia's anti-blacklisting statute. *Id.* ¶ 51 (citing Va. Code § 40.1-27).

At the outset, "[Section] 40.1-27 is [a] criminal statute that does not provide a private right of action." *Peterson v. DC Mech., LLC*, No. 1:22-cv-784, 2022 WL 22695554, at *2 (E.D. Va. Aug. 24, 2022) (Brinkema, J.) (granting motion to dismiss). Even if the Court liberally construes Count III to assert a common law claim for tortious interference with "contractual relations" or "prospective economic advantage," Plaintiff still fails to state a viable cause of action. Under either theory, a plaintiff must allege, among other things: (1) the existence of a valid contractual or business relationship or expectancy; (2) knowledge of the expectancy by the alleged interferer; and (3) "intentional" conduct by the interferer that disrupted or prevented the realization of the expectancy. *Pearson v. Prince William Cnty. Sch. Bd.*, No. 1:22-cv-377, 2023 WL 2506415, at *10–11 (E.D. Va. Mar. 14, 2023); *see also Koontz v. Jording*, No. 3:18-cv-380, 2019 WL 1339595, at *10 (E.D. Va. Mar. 25, 2019) (analyzing claim for "tortious interference with employment" under the standard for "tortious interference with a contractual relation"). The SAC's scant allegations do not come close to satisfying any of these elements.

Plaintiff generally alleges that her "job search was made more difficult" due to her placement in the Pivot Program, SAC ¶ 30, but she does not identify a "*specific, existing* [employment] contract [or] opportunity [that Amazon intentionally] interfered with," *Masco Contractor Servs. E., Inc. v. Beals*, 279 F. Supp. 2d 699, 709 (E.D. Va. 2003) ("Failure to allege any specific, existing economic interest is fatal to the claim.").[10] The only job opportunity Plaintiff mentions in the SAC is the one that she accepted and (presumably) still holds today. SAC ¶ 52. Therefore, Plaintiff cannot possibly establish that Amazon knowingly and intentionally interfered

---

[10] Plaintiff's disappointment with her new salary cannot plausibly be attributed to Amazon.

with that or any other opportunities. Indeed, Plaintiff does not allege that Amazon discussed her job performance or resignation with another employer *at all*. Rather, she concedes that Amazon merely "verif[ied] the dates of her employment and salary" upon request. *Id.* The fact that Amazon did not also provide a positive reference does not support a claim that Amazon "maliciously interfer[ed] with [Plaintiff's] effort to obtain new employment." *Id.* ¶ 51.

Not only is Plaintiff's interference claim wholly theoretical, it is also completely implausible. Although Plaintiff believes that she would "wind up being unfairly labeled as . . . not meeting expectations" and "fired for cause" if she attempted to complete the Pivot Program instead of resigning, SAC ¶ 8, she offers no factual basis to support such speculation. And, to be clear, Amazon could have determined that Plaintiff was not meeting expectations and fired her for cause immediately, *without* giving her the chance to right the ship first. As Plaintiff herself recognizes, Amazon made it "easier [for her] to find a new job" by allowing her to remain employed while she sought alternative employment. *Id.* It defies reason for Plaintiff to suggest that Amazon giving her an opportunity to either improve her performance or exit gracefully somehow interfered with her ability to seek other opportunities elsewhere.

*    *    *

At bottom, the only reasonable inference supported by the SAC is that Amazon disagreed with Plaintiff's self-assessment that she was an "excellent employee." SAC ¶ 7. Even after three bites at the apple, Plaintiff has not identified a single fact to support a plausible inference that Amazon acted *unlawfully*. Because federal courts "do not sit as a kind of super-personnel department," the Court should decline Plaintiff's invitation to adjudicate the merits of Amazon's routine and lawful employment decisions. *See DeLoach v. Blinken*, No. 1:21-cv-1121, 2022 WL 659184, at *7 (E.D. Va. Mar. 4, 2022) (Brinkema, J.).

29

## CONCLUSION

For these reasons, Amazon respectfully requests that this Court dismiss Plaintiff's Second

Amended Complaint with prejudice.

Dated: April 4, 2025                              Respectfully submitted,

                                                 By: /s/     *Jason C. Schwartz*
                                                 Jason C. Schwartz (Bar No. 43635)
                                                 Anna M. McKenzie (Bar No. 84022)
                                                 GIBSON, DUNN & CRUTCHER LLP
                                                 1700 M Street N.W. Washington, D.C. 20036-
                                                 5306
                                                 Tel. (202) 955-8242
                                                 Fax. (202) 530-9522
                                                 JSchwartz@gibsondunn.com
                                                 AMcKenzie@gibsondunn.com

                                                 *Attorneys for Defendants Amazon.com, Inc.,*
                                                 *and Amazon Web Services, Inc.*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on April 4, 2025, I electronically filed the foregoing with the Clerk of

Court using the CM/ECF system, which will send notification of such filing to counsel or parties

of record electronically by CM/ECF.

By: /s/ *Jason C. Schwartz*
Jason C. Schwartz (Bar No. 43635)
GIBSON, DUNN & CRUTCHER LLP
1700 M Street N.W.
Washington, D.C. 20036-5306
Tel. (202) 955-8242
Fax. (202) 530-9522
JSchwartz@gibsondunn.com

*Counsel for Defendants Amazon.com, Inc.,*
*and Amazon Web Services, Inc.*